**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| MONICA WOODS, as Administrator of the Estate of T.J., deceased<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF DES MOINES a Municipal Corporation; DANA WINGERT in his Official Capacity as Chief of Police for the City of Des Moines, Iowa; THOMAS GARCIA, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa; NOAH BOLLINGER, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa; and ZACHARY DUITSCHER, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa,<br><br>Defendants. | ) | Case No. 4:23-cv-00520<br><br>PLAINTIFF'S RESISTANCE TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER |

## RESISTANCE

COMES NOW Plaintiff Monica Woods and resists Defendants' ("City") motion for a protective order. In support of this resistance, Woods states:

## INTRODUCTION

On December 26, 2022, sixteen-year-old T.J. was involved in a police encounter that ended when they shot and killed him. On February 21, 2023, T.J.'s mother, Monica Woods, opened an estate, and the Court appointed her to be the Administrator. Pursuant to an investigation into a potential wrongful death claim, the Administrator served the City of Des Moines a subpoena duces tecum for the production of records related to the police encounter that resulted in T.J.'s death. On April 28, 2023, the Court entered into a

stipulated protective order restricting public disclosure of items the City deemed confidential that were produced in response to the subpoena.

On December 22, 2023, Woods filed this lawsuit asserting several claims against officers of the Des Moines Police Department arising from an officer-involved shooting of her sixteen-year-old son. (R. Doc. #1). On January 23, 2024, the City filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) claiming the officers are entitled to qualified immunity. (R. Doc. #10). Woods desires to use audio and video of the underlying event along with investigative reports as part of her amended Complaint and resistance to motion to dismiss.

Despite good faith efforts, the parties have not been able to resolve their legal disagreement as to the applicability of Iowa Code section 232.149(2). The parties also discussed the likelihood that the confidentiality dispute would recur in the course of the litigation as well as at trial. Woods believes the issue should be determined at the outset of the litigation while the City believes it would be more proper to issue a protective order until a jury is empaneled. The parties do agree, however, that if the City is correct in its interpretation of section 232.149(2), a protective order would be proper such that Woods may incorporate the confidential records into her pleadings and motions papers in sealed filings.

## I. APPLICABLE LEGAL PRINCIPLES

The question presented in this motion is whether Woods may file legal papers that include items the City asserts are confidential under Iowa Code section 232.149(2). The City requests a protective order under Rule 26(c)(1)(A). (R. Doc. #18 at 1). Because Woods already possesses the materials, it is not a discovery dispute under Rule 26(c). Nonetheless, if the Court determines the materials are confidential under the statute, then a protective order is appropriate. The fighting issue for this motion really is whether Woods must file under seal legal papers that incorporate materials from the purportedly confidential video and

investigative reports. "A party's ability to designate certain information 'confidential' under an agreed protective order does not provide a basis for filing the document under seal when offered in support of a dispositive motion." *Today's Office v. Steelcase, Inc.*, 2019 U.S. Dist. LEXIS 226674 *1 (E.D. Ark. Dec. 3, 2019).

"Generally speaking, there is a common-law right of access to judicial records, but that right is not absolute." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018). "The primary rationales for this right are the public's confidence in, and the accountability of, the judiciary." *Id.* "Whether the common-law presumption can be overcome is determined by balancing the interests served by the common-law right of access against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Id.* (quotations omitted). "In order to adjudicate the issue, a court must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access that would otherwise apply to such records." *Id.* "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Id.*

## II. IOWA LAW DOES NOT PROHIBIT DISCLOSURE OF JUVENILE INVESTIGATIVE RECORDS THAT PROVIDE THE IMMEDIATE CIRCUMSTANCES OF THE POLICE ENCOUNTER THAT CULMINATED WITH THE SHOOTING DEATH OF T.J.

### A. Section 232.149 does not protect juvenile records involving acts for which the district court would have primary jurisdiction

The City contends the body camera video and investigative records are confidential pursuant to Iowa Code section 232.149(2), which provides:

> 2. Records and files of a criminal or juvenile justice agency, an intake officer, or a juvenile court officer concerning a child involved in a delinquent act are confidential. The records are subject to sealing under section 232.150 unless the juvenile court waives its jurisdiction over the child so that the child may be prosecuted as an adult for a public offense. A criminal or

> juvenile justice agency may disclose to individuals involved in the operation of a juvenile diversion program police reports and related information that assist in the operation of the juvenile diversion program.

Iowa Code § 232.149(2). The City takes the position that T.J. was involved in a delinquent act. As a result, the City claims the materials in question "are protected under statute." (R. Doc. #18 at 5).

The Iowa Supreme Court has made clear that interpretation of Iowa statues begins with "the language of the *statute as a whole*." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020)(emphasis added). The language of section 232.149 as a whole demonstrates that it does not apply to T.J.'s delinquent acts. Section 3 provides that certain juvenile records "are public records" for offenses that begin in district court rather than juvenile court:

> 3. *Records and files of a criminal or juvenile justice agency, an intake officer, or a juvenile court officer concerning a defendant transferred under section 803.6 to the juvenile court for the alleged commission of a public offense are public records*, except that release of criminal history data, intelligence data, and law enforcement investigatory files is subject to the provisions of section 22.7 and chapter 692, and juvenile court social records shall be deemed confidential criminal identification files under section 22.7, subsection 9. The records are subject to sealing under section 232.150.

Iowa Code § 232.149(3)(emphasis added). When considered in unison, the only reasonable interpretation is that records involving delinquent acts for which the juvenile court has exclusive jurisdiction "are confidential" under section 232.149(2). Conversely, records involving juvenile acts for which the district court has primary jurisdiction "are public records" under section 232.149(3).[1] This is true even if the juvenile defendant is later transferred to juvenile court through a reverse waiver under section 803.6.

---

[1] Woods's interpretation is reinforced by section 232.147(4), which provides that "[o]fficial juvenile court records containing a petition or complaint alleging the commission of a delinquent act *that would be a forcible felony if committed by an adult* shall be public records subject to a confidentiality order under section 232.149A or sealing under section 232.150. Iowa Code § 232.147(4)(emphasis added).

In Iowa, "violations which constitute a forcible felony are excluded from the jurisdiction of the juvenile court and shall be prosecuted as otherwise provided by law unless the district court transfers jurisdiction of the child to the juvenile court upon motion and for good cause pursuant to section 803.6." *Id.* § 232.8(c). "The felony charge of assault on a police officer with a dangerous weapon under Iowa Code section 708.3A(2) is a forcible felony under Iowa Code section 702.11." *State v. Gordon*, 943 N.W.2d 1, 3 (Iowa 2020).[2] Accordingly, T.J.'s delinquent act would have started in district court, and his records would have been public – even if his case was subsequently transferred to juvenile court pursuant to a reverse waiver under section 803.6. As a result, section 232.149 does not render the records and files confidential as a matter of law.

**B. Notwithstanding section 232.149, Iowa Code section 22.7(5) does not protect disclosure of the immediate facts surrounding T.J.'s shooting death so long as his identity is not disclosed.**

By "enacting § 232.149(2), the Iowa legislature intended to prohibit disclosure of law enforcement records in order to protect the identity of the juvenile involved." 1992 Iowa Op. Att'y Gen. 41. But, section 232.149(2) must be read in conjunction with Iowa Code section 22.7(5), which mandates that law enforcement agencies release records that include the "immediate facts and circumstances surrounding a crime or incident." Iowa Code § 22.7(5). For this reason, the Iowa Attorney General has opined that section 232.149(2) "prohibits release of law enforcement information concerning juveniles prior to the filing of a complaint or petition regardless of whether a taking into custody takes place, or a citation

---

[2] In its Motion to Dismiss, the City asserts that T.J. pointed the gun in such a way that posed "an imminent threat to the officers and others." (R. Doc. #10 at 8). If the City stipulates that T.J. did not intentionally point the firearm or otherwise display it in a threatening manner to the officers, Woods would accept the stipulation. *See* Iowa Code § 708.1(2)(c) (defining an assault).

is issued. *It does not prohibit, however, release of information concerning the facts and circumstances of a crime*." 1992 Iowa Op. Att'y Gen. 41 (emphasis added).

It goes without saying that Woods does not seek to employ the body camera videos and corresponding investigative reports to disclose T.J.'s identity. That information already is known to her and has been reported publicly in the media. *See* Bill Steiden, *Mother of 16-year-old slain by Des Moines police files wrongful death lawsuit*, Des Moines Register (Dec. 27, 2023). Instead, Woods seeks to incorporate "information concerning the facts and circumstances of [the incident]" into her pleadings and motion papers. Iowa Code § 22.7(5). The City has no legal basis under section 22.7(5) to withhold that information from public disclosure.

Woods's interpretation is consistent with the legislative intent behind section 232.149, which is to "prohibit disclosure of contents of law enforcement records in order to protect the identity of the juvenile involved." 1992 Iowa Op. Att'y Gen. 41. It "assures that persons taken into custody by mistake or those for whom no criminal complaint is filed will never come to public attention." *Id.* The only reason T.J. was never charged as a delinquent juvenile was because the officers fatally shot him on the scene. More importantly, the entire matter has been brought to the public's attention through an agency review of the officer-involved shooting,[3] this wrongful death lawsuit, and surrounding media reporting. Additionally, the General Assembly provided a process through which the juvenile court could release delinquency records if the "public's interest in making the records public outweighs the juveniles interest in maintaining the confidentiality of the records." Iowa Code §232.149B(2). Of course, that process is not available to T.J. because

[3] On January 18, 2023, the Iowa Attorney General released her report to the public. *See* 2023_E24498DA99B44.pdf (iowaattorneygeneral.gov) (last accessed 12/29/23).

of his death. It would flout legislative intent to maintain confidentiality of the records when the party to which the privacy protection exists – T.J. – is the party seeking to have them released publicly.[4]

## III. THE CITY'S CONCERNS ABOUT PRETRIAL PUBLICITY WARRANT DENIAL OF IT'S REQUEST FOR A PROTECTIVE ORDER

As a fallback position, the City suggests that a protective order is needed because the video evidence and investigative reports would "serve to stoke fires and garner public interest in the case." (R. Doc. #18 at 5). That argument may have some merit if it was made with clean hands. At multiple points in its motion to dismiss, the City directly challenges the veracity of Woods's allegations in her Complaint. In footnote 1, for example, the City states that it "does not concede [the operative alleged] facts. They are and will be contested." (R. Doc. #10 at 1, n.1). On top of that, in footnote 2, the City declares, "It is difficult to imagine how an individual who is surrounded by officers arranged all around him draws the gun into a parallel-to-the-ground position and not be pointing the weapon at someone." (R. Doc. #7, n.2). The clear implication from footnote 2 is that Woods misrepresented facts in her Complaint. It simply is incongruent to argue on the one hand that a plaintiff has misrepresented video evidence and on the other to claim to be prejudiced by release of the actual video.[5]

---

[4] Because T.J. is deceased, this is not a situation in which he may be "stigmatized and humiliated if the sensitive information in the record is made public." *Compare Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990). T.J.'s privacy interests are represented by Woods – the administrator of his estate – who resists sealing the body cam video and investigative reports.

[5] If anyone has been prejudiced by pretrial publicity, it is Woods and the Estate of T.J. As mentioned previously, the Iowa Attorney General issued a report concluding that the actions of the officers "were entirely justified." (Iowa A.G. Report at 12). The Attorney General's analysis contains many factual conclusions that are directly contradicted by the

## CONCLUSION

For the reasons articulated herein, Plaintiff Monica Woods requests this Court deny the City's motion for a protective order in its entirety.

Date: February 20, 2024

Respectfully submitted

Gary Dickey, AT#0001999
DICKEY, CAMPBELL, & SAHAG LAW FIRM, PLC
301 East Walnut, Suite 1
Des Moines, Iowa 50309
Tel: 515.288.5008 Fax: 515.288.5010
gary@iowajustice.com

Lawrence Hyman
LAWRENCE H. HYMAN & ASSOCIATES, LTD.
111 W. Washington Street, Suite 1025
Chicago, Illinois 60602
Tel: 312.346.6766 Fax: 312.346.9688
hymanlaw@lhyman.com
*admission pro hac vice pending*

*Attorneys for Plaintiffs*

body camera video evidence. It also omits all of the mitigating statements made by T.J. during the police encounter.