IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **Monica Woods, as Administrator of the Estate of T.J., Deceased** | Case No. 4:23-cv-00520 |
| Plaintiff, | |
| v. | **Movant The Iowa Freedom of Information Council's Brief in Support of Its Limited Motion to Intervene with Respect to Securing and Maintaining Continued Public Access to Judicial Records, Evidence, and Proceedings and Its Resistance to Defendants' Motion for Protective and Sealing Order** |
| **City of Des Moines, Dana Wingert, Thomas Garcia, Noah Bollinger, and Zachary Duitscher,** | |
| Defendants. | |
| *The Iowa Freedom of Information Council,* | **(Resisted in Part by Defendants)** |
| Movant. | |

**Introduction**[1]

The lawsuit seeks to hold a municipality and four of its sworn law enforcement officers liable for the December 26, 2020 death of a Black teenager who Des Moines police shot inside his grandmother's apartment, reportedly while he held a firearm and raised it above his waist.

---

[1] The factual recitation in this Introduction derives from docket filings, public records, and news reports that this Court may consider as a matter of judicial notice under Fed. R. Evid. 201, which Movant hereby requests under Rule 201(c)(2). *See, e.g*, Brenna Bird & Scott Brown, *Iowa Attorney General's Review of Officer Involved Death: Incident of December 26, 2022 at 400 East McKinley, Des Moines, Iowa*, Iowa Dep't of Just., Off. of the Att'y Gen. (Jan. 18, 2023), https://www.iowaattorneygeneral.gov/media/cms/2023_E24498DA99B44.pdf (last visited Feb. 18, 2024); *see also Iowa Police Won't Release Videos of Officers Shooting Teen*, Associated Press (Jan. 29, 2023, 9:36 AM), https://apnews.com/article/iowa-state-government-des-moines-1ce35c2c65563a7b0049c80a4cda0d7f (last visited Feb. 18, 2024).

Police assert that the homicide was justified, thereby absolving them from liability to Plaintiff Monica Woods, the parent and administrator of the dead minor identified only by the initials T.J. The government and its officers ask this Court to dismiss her lawsuit, claiming a qualified immunity. Defs.' Mot. to Dismiss, ECF No. 10.

One critical collection of evidence Plaintiff asserts is relevant to deciding that pending dispositive motion rests within police body camera video recordings of the shooting she intends to file as exhibits in this matter.

When the shooting occurred, T.J. was 16 years old. Officers responded to a 911-call from T.J.'s stepfather, who told operators the boy had "pulled a handgun" on him. When Des Moines police arrived at the apartment complex, they learned T.J. was at his grandmother's nearby rental unit. Two responding officers went inside her apartment, a third and a fourth entered shortly thereafter, breaking through a rear glass door to gain entry.

As the officers moved about the apartment, their department-issued, taxpayer-funded body cameras recorded what transpired. An Iowa Attorney General investigative report that cleared the four officers of criminal wrongdoing extensively described what the videos portrayed. According to the report, the recordings evidenced that the officers negotiated with T.J. for four minutes, 20 seconds and that they and family members made more than 70 requests asking him to drop his gun and surrender peacefully.

The Attorney General's report indicated that when T.J. started to raise his gun for a fourth time, three officers fired, hitting him 14 times in the chest, abdomen and head. The report disclosed that neither T.J. nor Defendant Garcia discharged their weapons.

T.J. later died at a Des Moines hospital.

Initially, the Des Moines Police Department's public information officer—Sgt. Paul Parizek—supported releasing body camera video to the news media. That degree of openness and accountability would have allowed for better public acceptance of this police homicide by permitting the public to judge whether the circumstances justified use of lethal force without filtering and screening from law enforcement and elected officials.[2]

Such openness did not happen, however, because city lawyers soon overruled Sgt. Parizek. As reported by the Associated Press, he thereafter told the media "the city lawyers told police that the [videos] couldn't be released under state law" which he summarized as stating "police can't release records or video about a juvenile allegedly committing a crime before a complaint is filed." Sgt. Parizek then advised the press, "the law still applies in this case even though the boy was killed and won't be charged."

Relying on that strained reading of Iowa law[3], as Defendants urge this Court to immunize them from liability, they simultaneously seek to deny the public access to the evidence they have

---

[2] Issues related to police use of force, often against Black people, have been important to voters in recent elections. For example, Iowa's Attorney General, whose office issued the report clearing Defendants of criminal misconduct in this case, campaigned on and maintains a "back the blue" platform. *See, e.g*, Iowa AG Brenna Bird (@AGIowa), X (Dec. 18, 2023, 8:57 PM), https://twitter.com/AGIowa/status/1736943718974779392 (last visited Feb. 19, 2024) (stating, "And now, my promise to you is this: As your AG, I will ALWAYS Back the Blue!").

[3] Movant does not concede that Iowa law so restricts public access to body camera video recordings based on the age of a perpetrator or victim and contests the point. As *Steele* makes clear, however, the interpretation of a state law does not control whether federal judicial records can remain secret. *Steele v. City of Burlington*, 334 F. Supp. 3d 972, 981–82 (noting "Defendants' central argument is that because Iowa law deems certain materials confidential—specifically, Officer Timothy Merryman and Hill's body camera videos, Hill's medical records, and the Iowa Division of Criminal Investigation (DCI) investigative files—the Court must defer to Iowa law as a compelling reason for maintaining confidentiality" and concluding "[t]he only exception that courts have recognized to the applicability of the federal common-law presumption of access is when *Congress* has spoken to the issue." (emphasis in original)); *cf. United States v. Story County*, 28 F. Supp. 3d 861, 872, 877 (S.D. Iowa 2014) (first noting that "[t]he subject emails are federal records and not subject to Iowa's Public Records Act" and then

or will present to the Court. As their counsel stated in a February 19, 2024 email regarding this intervention request, their position is "that the body camera videos at issue are confidential under Iowa law and should be sealed. To that extent, the City will resist public access to case materials involving the videos."

The scope of the protective order the Defendants propose, *see* Defs.' Proposed Protective Order, ECF No. 18-3, is breathtaking: they seek to seal "Protected Material" and "any testimony. . . or presentations by Parties or their Counsel that might reveal Protected Material," and they want to limit access to filed "Confidential" material to "the court and its personnel."

Accordingly, Defendants in effect would permit use body camera video recordings of a police homicide for consideration in their effort to gain qualified immunity but want to do so by requiring an Article III judge to receive and consider such evidence in secret.

Fortunately, however, federal common law, federal constitutional law, and direct precedent in this District dictate that such a private arbitration cannot and will not occur.

First, that controlling body of law supports granting Movant intervenor status.

More importantly, that precedent confirms that no protective or sealing order should deny the public access to federal judicial records, as defined in *Steele v. City of Burlington*, 334 F. Supp. 3d 972, 981–82 (S.D. Iowa 2018), irrespective of the private interests of Defendants or the secrecy they say state laws mandates.

**Argument**

In *Steele*, this Court rejected a motion by police that similarly sought to keep judicial records secret, including police video recordings that objectively portrayed what happened when

---

discussing why access did not depend on state law because the documents belonged to the United States).

4

a Burlington mother died at the hands of law enforcement. 334 F. Supp. 3d at 985 ("Considering all of the facts, circumstances, and interests advanced by the parties, the Court finds that Intervenors' heightened presumption of access to summary judgment records out-weighs Defendants' countervailing reasons for nondisclosure.").

The procedural difference between a summary judgment setting and the motion to dismiss context here lacks any distinction because "[S]trong weight [should] be accorded the public right of access to judicial documents . . . [that] determin[e] litigants' substantive rights—conduct at the heart of Article III." *Steele*, 334 F. Supp. 3d at 980 (alterations in original) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)); *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013) (filings constitute judicial records subject to an access right when the documents in issue play a role in the adjudicatory process); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135–36 (9th Cir. 2003) (access right not overcome where documents subject to a protective order are filed under seal as attachments to a dispositive motion; right of access can be overridden only if sufficiently compelling reasons exist for doing so); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) ("[D]iscovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court.").

The Iowa Freedom of Information Council (the "Council") therefore appears for the limited purposes of:

(a) Seeking mandatory or permissive intervention to secure and maintain continued public access to judicial records, evidence, and proceedings in this civil matter involving the police homicide of a Des Moines teenager, including police body camera video recordings, and

(b) Resisting the pending motion for a protective and sealing order filed by Defendants City of Des Moines, Dana Wingert, Thomas Garcia, Noah Bollinger, and Zachary Duitscher that would deny Movant, its members

and supporters, and the public at large access to judicial records, including those police body camera video recordings.

## Motion to Intervene

Under Fed. R. Civ. P. 24(a), a court considering a timely motion to intervene such as this shall permit a non-party to intervene when it claims an interest in the subject of an action and "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Here, Movant has independent rights and interests in the public availability of judicial records, including body camera video recordings, that the litigants cannot adequately represent, making their intervention as a matter of right correct.

Further, Fed. R. Civ. P. 24(b) fits this situation and makes a grant of permissive intervention to Movant appropriate. Courts regularly grant intervention status to a media organization seeking access to judicial records, especially whereas here a grant of a request to intervene will not cause "undue delay" and "prejudice to a party."

In satisfaction of Fed. R. Civ. P. 24(c), this pleading hereby sets forth the following claims that Movant seeks to address as intervenor:

(a)  Whether Defendants' request for a protective order in discovery properly can encompass issuance of sealing orders affecting access by Movant and the public to judicial records, and

(b)  Whether this Court can or should issue such a sealing order considering the longstanding history and tradition of open courts, the law in this Circuit and District, and the importance of complete access to judicial records where a case involves a police-involved homicide, and the government agents claim an immunity to liability for damages?

Notably here, while Defendants oppose the relief the Council seeks, they and Plaintiffs do not resist Movant's motion to intervene. Further, according to a filing made on February 20, 2024, "Woods desires to use audio and video of the underlying event along with investigative

reports as part of her amended Complaint and resistance to motion to dismiss." Pls.' Resp. to Defs.' Mot. for Protective Order, ECF No. 19, at 2. Given the recent filings, permitting the Council to intervene will not cause undue delay or prejudice.

Thus, as in *Steele*, this Court should allow the Council to intervene for the limited purpose of resisting Defendants request for protective and sealing orders that would withhold judicial records, including police body camera video recordings, from Movant, its members and supporters, and the public. *See also Kirby v. Res-Care, Inc.*, 596 F. Supp. 3d 588, 592 (S.D.W. Va. 2022) ("Further, permissive intervention is an appropriate method for a nonparty to seek access to protected or sealed documents. *See In re Grand Jury Subpoena*, 836 F.2d 1468, 1470 (4th Cir. 1988).").

### Resistance to Entry of Any Protective or Sealing Order that Bars or Limits Public Access to Judicial Records

Because this civil case raises claims stemming from the December 26, 2020 police shooting of a 16-year-old, it rests squarely amidst the heightened public awareness of police violence in America, often against Black people, and involves matters of utmost public concern and interest. *See generally Fatal Force*, Wash. Post (Feb. 14, 2024), https://www.washingtonpost.com/graphics/investigations/police-shootings-database (last accessed Feb. 19, 2024) (tracking 9,379 fatal police shootings since 2015).

Notwithstanding this context and the need in a democracy for the open and accountable administration of justice, Defendants seek to shroud this federal Court action in secrecy as if it were a private forum where substantive filings and information presented in evidence should remain shielded from public access, review, and scrutiny.

Movant seeks to prevent that hijacking of open courts from happening.

As discussed above, the analysis and holding by Senior Judge James Gritzner in *Steele* provides a roadmap to the review and result that should occur here. *Steele* accepts that a common law right secures public access to judicial records, noting "the Eighth Circuit has recognized 'a modern trend in federal cases to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment, or resolved by settlement.'" *Steele*, 334 F. Supp. 3d at 976–77 (quoting *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (citation omitted)).

Once documents are deemed judicial records, which merits-based dispositive motions entail, the Court "must next consider whether the party seeking to prevent disclosure has overcome the common law right of access that would otherwise apply to such records." *Id.* at 976; *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) (where Judge Robert Sack observed "[t]he public has a common law presumptive right of access to judicial documents . . . and likely a constitutional one as well" (citation omitted)).

Here, the right of access to judicial records under common law remains unrebutted by any evidence from Defendants that their private interest in secrecy (stemming singly from their interpretation of an Iowa statute) is compelling and warrants setting aside the public policy and salutary grounds for maintaining access to judicial records. Further, the idea that the Iowa legislature's silence on what happens to otherwise confidential documents upon filing with a United States District Court somehow controls here not only implicates separation of powers issues but disregards the basic tenets of Federalism and federal supremacy.

It remains noteworthy that this Court is not being asked to decide whether Iowa law requires Defendants to keep body camera video recordings of the police killing of T.J.

confidential but rather the material question is only whether a federal court discovery protective order can or should shroud a dispositive, merits-based motion and its judicial records in secrecy.

Here the public's access interests are substantial—indeed, the public always has legitimate concerns in securing timely and unfettered access to court proceedings and records because such availability "promotes public confidence" and "diminishes the possibilities for injustice, incompetence, perjury, and fraud." *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

Those public interests hold greater significance when the litigation and the information in judicial records relate to the government itself. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597–98 (1978) (stating "The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government." (citations omitted)).

Furthermore, public concern perhaps reaches its apex when the lawsuit at issue involves the death of a juvenile at the hands of sworn police officers.

At bottom, litigants and state officials do not have the ability to dictate that federal courts seal judicial records; instead, "The district court must keep in mind the rights of a third party—the public, 'if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system.'" *Wilson v. Am. Motors Corp.*, 759 F. 2d 1568, 1571 (11th Cir. 1985) (quoting *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)).

## Conclusion

Based on the foregoing, Movant requests that the Court:

- ■ Grant it mandatory or permissive intervention,

- ■ Consider its arguments in favor of securing and maintaining access by Movant and the public to all judicial records, as delineated in *Steele*, filed in this case including police body camera video recordings, and

- ■ Deny Defendants request for protective and sealing orders, including that proposed in ECF No. 18-3, to the extent they would deny, delay, or restrict public access to judicial records (rather than mere discovery exchanged between the parties) or otherwise would limit or adversely affect public attendance at court proceedings and instead order that all judicial records, including body camera video recordings, submitted as evidence or exhibits or reviewed by the Court in its consideration of a substantive. merits-based, dispositive, or evidentiary motion, remain available for public access and copying.

Dated:  February 21, 2024.            Respectfully submitted,

/s/ Michael A. Giudicessi
Michael A. Giudicessi
  giudicessi@iabar.org
Legal Counsel
THE IOWA FREEDOM OF INFORMATION COUNCIL
P.O. Box 8002
Des Moines, Iowa 50301
Telephone: (515) 210-1240

/s/ Rita Bettis Austen
Rita Bettis Austen
  rita.bettis@aclu-ia.org
Legal Director
ACLU OF IOWA
505 Fifth Ave.
Des Moines, Iowa 50309
Telephone: (515) 243-3988

**ATTORNEYS FOR MOVANT**

**Certificate of Service**

  The undersigned certifies that on February 21, 2024, a true copy of **this brief** was served to each attorney of record through the Court's electronic filing system at his/her last known e-mail address as shown below.

/s/Rita Bettis Austen

Copy to:
Gary Dickey
 Gary@iowajustice.com
*Attorney for Plaintiff*

Michelle Mackel-Wiederlanders
 mrmackel@dmgov.org
Luke DeSmet
 ldesmet@dmgov.org
*Attorneys for Defendants*