## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | | |
|---|---|---|
| MONICA WOODS, as Administrator of the Estate of T.J., | * <br> * <br> * | CIVIL NO. 4:23-cv-00520-SMR-SBJ |
| Plaintiff, | * | |
| v. | * <br> * | |
| CITY OF DES MOINES, DANA WINGERT, THOMAS GARCIA, NOAH BOLLINGER, and ZACHARY DUITSCHER, | * <br> * <br> * <br> * <br> * | **ORDER** |
| Defendants. | * <br> * | |

## I. INTRODUCTION

Plaintiff Monica Woods brought this action as the Administrator of the Estate of her son T.J. *See* Dkt. 1. Woods alleges that "[o]n December 26, 2022, at the age of 16 years old, T.J. was killed by the unlawful use of deadly force by Defendants Des Moines Police Officers acting under color of law as police for Defendant City of Des Moines." *Id.* at ¶ 2. Woods claims Defendants violated T.J.'s constitutional rights and their negligence caused T.J.'s death.

Defendants filed a Motion to Dismiss (Dkt. 10) contending they are entitled to qualified immunity. Subsequently, Woods filed an unresisted motion to extend the deadline to respond to the motion to allow the parties time to meet and confer regarding a dispute over the confidentiality of audio and video captured on officers' body cameras. Dkt. 15. The Court granted the motion and continued Woods' deadline to respond until further order. Dkt. 16. Counsel for the parties were directed to confer in good faith to reach agreement regarding the body camera video and file a joint status report. *Id.* The parties submitted a report indicating they were not able to resolve their disagreement. Dkt. 17.

Now before the Court is a Motion for Protective Order (Dkt. 18) filed by Defendants who request the Court to enter a proposed protective order (Dkt. 18-3) submitted with the motion. Defendants contend the "material in question" is protected as confidential pursuant to Iowa statute and should not be disclosed to the public at any time prior to trial in this case. Woods resists the motion and expresses a "desire[] to use audio and video of the underlying event along with investigative reports as part of her amended Complaint and resistance to motion to dismiss." Dkt. 19 p. 2. From Woods' perspective, "[t]he fighting issue . . . really is whether Woods must file under seal legal papers that incorporate materials from the purportedly confidential video and investigative reports." *Id.* pp. 2-3. Defendants did not submit a reply.

However, a Motion to Intervene (Dkt. 20) was filed by The Iowa Freedom of Information Council. As described within the motion, the Council "is a nonpartisan, nonprofit corporation" which "serves as an umbrella organization that seeks to foster and protect access to information from and about government, including the courts." *Id.* ¶ 8. "It was founded by and remains largely comprised of journalists, lawyers, educators, and other Iowans devoted to open government and government accountability." *Id.* It seeks to intervene "for the limited purpose of resisting entry of the protective and sealing order that Defendants seek and to secure and maintain public access to judicial records filed or considered in connection with substantive or merits-based motions or rulings in this case, including most notably any motions to dismiss or summary judgment motions, and the pleadings, exhibits, filings, and evidence presented to this Court in connection with submission of a dispositive motion for hearing or decision such as police body camera video recordings." *Id.* ¶ 26. Citing Federal Rule of Civil Procedure 24, the Council contends intervention "is appropriate as a matter of right, or because permissive intervention grounds exist." *Id.* ¶ 23. Neither Woods nor Defendants filed a response to the motion to intervene.

For the multiple reasons which follow, both motions before the Court are denied.

## II. DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Based on the parties' representations, Woods is the mother of T.J. and was appointed to be the administrator of his estate. In that role, she served the City of Des Moines with "a subpoena duces tecum for the production of records related to the police encounter that resulted in T.J.'s death." Dkt. 19 p. 2. According to Woods, a "court" entered a stipulated protective order on April 28, 2023 "restricting public disclosure of items the City deemed confidential that were produced in response to the subpoena." *Id.* pp. 2-3. Although not specified, the "court" referenced by Woods is not this Court and the referenced "stipulated protective order" was not entered by this Court. The lawsuit before this Court was not even filed until December 22, 2023. Dkt. 1. Counsel for the parties represent there is a dispute regarding the confidentiality of the "items" produced by the City under Iowa statutory law which led to the filing of Defendants' motion now before this Court.

Defendants request the entry of a protective order under Federal Rule of Civil Procedure 26 which governs the discovery process in federal courts. Dkt. 18 p. 1. Specifically, Defendants cite to Rule 26(c)(1)(A) which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery[.]

Fed. R. Civ. P. 26(c)(1)(A). In the Court's opinion, the protections available under Rule 26(c)(1)(A) are not applicable to the circumstances under which Defendants are seeking relief. The "material in question" was already obtained by Woods as the administrator of T.J.'s estate months before this action was initiated and, as represented by the parties, done so under a stipulated protective order from another, undisclosed court. Moreover, Defendants have not even filed an answer in this action and, pursuant to Rule 26(d)(1), no party may seek discovery from any source

at this early stage of this federal case. Plainly, the dispute between the parties is not a "discovery" matter at all. But even if Defendants could procedurally obtain relief under Rule 26(c)(1)(A), the Court is not convinced Defendants are entitled to the specific relief being requested.

The proposed protective order submitted by Defendants contains multiple general provisions typically stipulated to by parties for maintaining the confidentiality of materials and information during the discovery process. Dkt. 18-3. Therein is a proposed definition of "protective material" which provides in part:

> Pursuant to Iowa Code 232.149, all records of the Des Moines Police Department concerning T.J., who was involved in a delinquent act are confidential.

*Id.* ¶ 2.13. In support of their request to enter the proposed order, Defendants cite to Iowa Code § 232.149(2) which provides as follows:

> Records and files of a criminal or juvenile justice agency, an intake officer, or a juvenile court officer concerning a child involved in a delinquent act are confidential. The records are subject to sealing under section 232.150 unless the juvenile court waives its jurisdiction over the child so that the child may be prosecuted as an adult for a public offense. A criminal or juvenile justice agency may disclose to individuals involved in the operation of a juvenile diversion program police reports and related information that assist in the operation of the juvenile diversion program.

Iowa Code § 232.149(2). In turn, Defendants cite Iowa Code § 232.151 which provides as follows:

> Any person who knowingly discloses, receives, or makes use or permits the use of information derived directly or indirectly from the records concerning a child referred to in sections 232.147 through 232.150, except as provided by those sections or section 13B.4A, subsection 2, paragraph "c", shall be guilty of a serious misdemeanor.

Iowa Code § 232.151(1).

Defendants contend the "material in question" is protected by these statutory provisions and broadly assert "[c]riminal agency records related to juvenile delinquency are confidential." Dkt. 18 pp. 2-3. Defendants state T.J. "committed a delinquent act" and, citing an Iowa Attorney General Opinion, maintain T.J.'s death does not "preempt[] any juvenile delinquency

adjudication." *Id.* p. 3. From Defendants' perspective, "[i]n order to facilitate the broad goals of discovery while safeguarding these confidential records pursuant to statute, this court should enter a protective order that explicitly excludes dissemination consistent with the statute." *Id.* p. 4. Defendants suggest "[a]s litigation proceeds, the terms of the protective order may be reevaluated." *Id.*

Defendants also raise concerns as to exposing the body camera videos to the public which would "contaminate a jury pool and stir up foment." *Id.* p. 4. Defendants acknowledge there is "a qualified common law right to access judicial records," citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), but contend "the public has no right to see material that is protected by law." *Id.* pp. 4-5. Defendants emphasize they are "not asking to seal the entire case from public view." *Id.* p. 5. They further argue:

> The status of T.J. as a minor is not the only consideration here. Publicity is simply not conducive to fair trials. These are extremely sensitive videos, with disturbing subject matter. This case has already garnered threatening actions toward one of the named officers. To release the videos and details of the delinquent act and response would serve to stoke fires and garner public interest in the case, which is the stated goal for the Plaintiff. Defendants deserve a fair trial and a neutral jury pool. To allow dissemination of these videos would severely impede the equity of this proceeding.

*Id.* Defendants assert redaction is not appropriate because "all records and files of a criminal justice agency [are] confidential" under the statute. *Id.* p. 3. And on a final point, Defendants contend images from the video are not necessary or appropriate for Woods' response to the Motion to Dismiss. *Id.* pp. 5-6. But if allowed, Defendants suggest the video can be submitted for the Court's review under seal. *Id.* p. 6.

In conclusion, Defendants request that the Court enter the proposed protective order "which specifically prohibits dissemination of items prohibited by statute, including Iowa Code § 232.149(2), which bars disclosure of all records of the City of Des Moines Police Department

related to T.J.'s delinquent acts." *Id.*

In resistance, Woods argues "Iowa law does not prohibit disclosure of juvenile investigative records that provide the immediate circumstances of the police encounter that culminated with the shooting of T.J." Dkt. 19 pp. 3-7. Based on Woods' interpretation of Iowa statutory provisions, "[s]ection 232.149 does not protect juvenile records involving acts for which the district court would have primary jurisdiction," explaining as follows:

> The language of section 232.149 as a whole demonstrates that it does not apply to T.J.'s delinquent acts. Section 3 provides that certain juvenile records "are public records" for offenses that begin in district court rather than juvenile court:

>> 3. Records and files of a criminal or juvenile justice agency, an intake officer, or a juvenile court officer concerning a defendant transferred under section 803.6 to the juvenile court for the alleged commission of a public offense are public records, except that release of criminal history data, intelligence data, and law enforcement investigatory files is subject to the provisions of section 22.7 and chapter 692, and juvenile court social records shall be deemed confidential criminal identification files under section 22.7, subsection 9. The records are subject to sealing under section 232.150.

> Iowa Code § 232.149(3) (emphasis added). When considered in unison, the only reasonable interpretation is that records involving delinquent acts for which the juvenile court has exclusive jurisdiction "are confidential" under section 232.149(2). Conversely, records involving juvenile acts for which the district court has primary jurisdiction "are public records" under section 232.149(3). This is true even if the juvenile defendant is later transferred to juvenile court through a reverse waiver under section 803.6.

> In Iowa, "violations which constitute a forcible felony are excluded from the jurisdiction of the juvenile court and shall be prosecuted as otherwise provided by law unless the district court transfers jurisdiction of the child to the juvenile court upon motion and for good cause pursuant to section 803.6." *Id.* § 232.8(c). "The felony charge of assault on a police officer with a dangerous weapon under Iowa Code section 708.3A(2) is a forcible felony under Iowa Code section 702.11." *State v. Gordon*, 943 N.W.2d 1, 3 (Iowa 2020). Accordingly, T.J.'s delinquent act would have started in district court, and his records would have been public – even if his case was subsequently transferred to juvenile court pursuant to a reverse waiver under section 803.6. As a result, section 232.149 does not render the records and files confidential as a matter of law.

*Id.* pp. 4-5.

In addition, Woods contends that "[n]otwithstanding section 232.149, Iowa Code section 22.7(5) does not protect disclosure of the immediate facts surrounding T.J.'s shooting death so long as his identity is not disclosed," explaining as follows:

> By "enacting § 232.149(2), the Iowa legislature intended to prohibit disclosure of law enforcement records in order to protect the identity of the juvenile involved." 1992 Iowa Op. Att'y Gen. 41. But, section 232.149(2) must be read in conjunction with Iowa Code section 22.7(5), which mandates that law enforcement agencies release records that include the "immediate facts and circumstances surrounding a crime or incident." Iowa Code § 22.7(5). For this reason, the Iowa Attorney General has opined that section 232.149(2) "prohibits release of law enforcement information concerning juveniles prior to the filing of a complaint or petition regardless of whether a taking into custody takes place, or a citation is issued. It does not prohibit, however, release of information concerning the facts and circumstances of a crime." 1992 Iowa Op. Att'y Gen. 41 (emphasis added).

*Id.* pp. 5-6. Woods emphasizes she "does not seek to employ the body camera videos and corresponding investigative reports to disclose T.J.'s identity [which] already is known to her and has been reported publicly in the media." *Id.* "Instead, Woods seeks to incorporate 'information concerning the facts and circumstances of [the incident]' into her pleadings and motion papers." *Id.* p. 6. From Woods' perspective, Defendants' have "no legal basis under section 22.7(5) to withhold that information from public disclosure." *Id.* It is further argued:

> Woods's interpretation is consistent with the legislative intent behind section 232.149, which is to "prohibit disclosure of contents of law enforcement records in order to protect the identity of the juvenile involved." 1992 Iowa Op. Att'y Gen. 41. It "assures that persons taken into custody by mistake or those for whom no criminal complaint is filed will never come to public attention." *Id.* The only reason T.J. was never charged as a delinquent juvenile was because the officers fatally shot him on the scene. More importantly, the entire matter has been brought to the public's attention through an agency review of the officer-involved shooting, this wrongful death lawsuit, and surrounding media reporting. Additionally, the General Assembly provided a process through which the juvenile court could release delinquency records if the "public's interest in making the records public outweighs the juveniles interest in maintaining the confidentiality of the records." Iowa Code §232.149B(2). Of course, that process is not available to T.J. because of his death. It would flout legislative intent to maintain confidentiality of the records when the party to which the privacy protection exists – T.J. – is the party seeking to have them released publicly.

*Id.* pp. 6-7.

On a final point, Woods disputes Defendants' concerns as to adverse pretrial publicity, commenting the "argument may have some merit if it was made with clean hands":

> At multiple points in its motion to dismiss, the City directly challenges the veracity of Woods's allegations in her Complaint. In footnote 1, for example, the City states that it "does not concede [the operative alleged] facts. They are and will be contested." (R. Doc. #10 at 1, n.1). On top of that, in footnote 2, the City declares, "It is difficult to imagine how an individual who is surrounded by officers arranged all around him draws the gun into a parallel-to-the-ground position and not be pointing the weapon at someone." (R. Doc. #7, n.2). The clear implication from footnote 2 is that Woods misrepresented facts in her Complaint. It simply is incongruent to argue on the one hand that a plaintiff has misrepresented video evidence and on the other to claim to be prejudiced by release of the actual video.
>
> If anyone has been prejudiced by pretrial publicity, it is Woods and the Estate of T.J. As mentioned previously, the Iowa Attorney General issued a report concluding that the actions of the officers "were entirely justified." (Iowa A.G. Report at 12). The Attorney General's analysis contains many factual conclusions that are directly contradicted by the body camera video evidence. It also omits all of the mitigating statements made by T.J. during the police encounter.

*Id.* pp. 7-8 & n. 5. Woods requests that the Court deny Defendants' motion for a protective order in its entirety. *Id.*

In the Court's view, the parties conflate a number of different issues and request broad relief which would constitute theoretical advisory opinions without establishing jurisdictional authority, factual evidentiary support and proper procedural development. Again, as already noted, the parties' dispute is not a "discovery" matter within the context of this case. Moreover, the issue of whether materials obtained prior to and outside the context of this case are "confidential" as a matter of Iowa statutory law is distinct from the question of public access to materials filed in federal court.

## A. Confidentiality of "Material in Question" Under Iowa Statutes

Foremost, neither party has established that whether Iowa statutory provisions protect the "material in question" obtained prior to and outside the context of this action is a question which

can be determined within this Court's limited federal jurisdictional authority. From this Court's perspective, that is a matter for the court under which Woods as the estate administrator obtained the "material in question" and, reportedly, entered a stipulated protective order. Neither party has cited any legal jurisdictional authority for this Court to "resolve their legal disagreement as to the applicability of Iowa Code section 232.149(2)" as requested. Dkt. 19 p. 2. If such resolution is needed, those are matters presumably within the purview of the court which entered the stipulated protective order, or perhaps within an appropriate state action. For this Court to do so, would constitute an improper theoretical advisory opinion.

Even if this Court had jurisdictional authority to resolve the parties' "legal disagreement," none of the parties have submitted any type of evidence in support of their submissions and arguments. Nor is there any record of evidence on the docket in any form. A complaint has been filed followed by a motion to dismiss based on the allegations within the complaint. As represented in the motion: "The City does not concede these facts. They are and will be contested." Dkt. 10 p. 1 n. 1.

Defendants have submitted no record of evidence for this Court to enter the proposed order which provides T.J. "was involved in a delinquent act." Defendants have submitted no evidence the "material in question" are even "records of the Des Moines Police Department" or "a criminal or juvenile justice agency" let alone subject to the provisions of Iowa Code § 232.149(2). Those are not matters this Court may accept as "fact" simply because counsel says so within an unsupported motion in an action with an unanswered complaint with "contested" facts. As provided in the Court's local rules:

> If a motion is premised upon a Federal Rule of Civil or Criminal Procedure that permits consideration of facts not appearing of record, then the moving party must electronically attach to the motion, and file under the same docket entry as the motion, any affidavits, other sworn materials, photographs, or documentary evidence upon which the moving party relies.

L.R. 7(b)(4). Defendants did not attach any affidavits or evidence of any kind. In addition, "[f]or every motion, the moving party must prepare a brief containing a statement of the grounds for the motion and citations to the authorities upon which the moving party relies." L.R. 7(d). Defendants did not submit a brief. Given the nature and potential impact of the relief being requested, as expressed by the parties' themselves, these shortcomings are not mere technicalities.

In sum, Defendants have not established with jurisdictional authority, sufficient fact or legal reason entitlement to the entry by this Court of their proposed protective order with the inclusion of the following language: "*Pursuant to Iowa Code 232.149, all records of the Des Moines Police Department concerning T.J., who was involved in a delinquent act are confidential.*" Defendants have not shown this Court T.J. "was involved in a delinquent act" as either a matter of fact or law. Nor have Defendants shown this Court has jurisdiction or authority to even make such a determination under the present motion or within the context of this litigation. For all those reasons, the Motion for Protective Order (Dkt. 18) must be denied.

The Court recognizes the parties are seeking guidance as to how to proceed efficiently before this Court without running afoul of law. And the Court appreciates counsel's cooperative efforts to reach agreement and seek such guidance. Nevertheless, this Court cannot provide broad advisory opinions on matters absent proper jurisdiction, procedure, and sufficient fact evidence.

**B. Public Access to "Material in Question"**

Contrary to Woods' assertion that "the issue should be determined at the outset of the litigation," Dkt. 19 p. 2, a broad definitive determination as to whether the "material in question" may or may not be disclosed to the public now or any time in the future would not be prudent or procedurally proper under the record before this Court and current pre-answer posture of this litigation. Moreover, making such a definitive determination at this stage would be premature and

contrary to binding precedent of the United States Supreme Court and Court of Appeals for the Eighth Circuit, and applicable Federal Rules of Civil Procedure.

It is well-established that "a common-law right of access to judicial records" applies in civil proceedings. *See IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978)); *see also*, *e.g.*, *United States v. Gray*, 59 F.4th 329, 333 (8th Cir. 2023) ("There is a common law presumption of public access to judicial records."); *United States v. Garner*, 39 F.4th 1023, 1024 (8th Cir. 2022) ("Court proceedings are presumptively public."); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021) ("[T]here is 'a common-law right of access to judicial records.'") (quoting *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990) (quoting *Nixon*, 435 U.S. at 597)). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings and 'to keep a watchful eye on the workings of public agencies.'" *IDT Corp.*, 709 F.3d at 1222 (internal citation omitted) (quoting *Nixon,* 435 U.S. at 598). In addition, it "provides a measure of accountability to the public at large, which pays for the courts." *Id.*

But the right of access to "judicial records is not absolute." *Nixon,* 435 U.S. at 598. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* According to the Supreme Court, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599; *see also In re Bair Hugger*, 9 F.4th at 791 (quoting *Nixon,* 435 U.S. at 598-99); *Webster Groves*, 898 F.2d at 1376 (same); *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986) (same).

As instructed by the Eighth Circuit, "[w]here the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the

interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223; *see also In re Bair Hugger*, 9 F.4th at 791 (quoting *IDT Corp.*, 709 F.3d at 1223); *Seidl v. American Century Companies, Inc.*, 799 F.3d 983, 994 (8th Cir. 2015) (same). "The consideration of competing values that must be done . . . is heavily reliant on the observations and insights of the presiding judge." *In re Bair Hugger*, 9 F.4th at 791 (internal quotation marks and citation omitted).

"'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts.'" *IDT Corp.*, 709 F.3d at 1224 (quoted citation omitted). "[J]udicial records and documents generally will 'fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* at 1223 (quoted citation omitted).

Accordingly, "[i]n order to adjudicate the issue, a court must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access that would otherwise apply to such records." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (*Flynt II*). "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Id.* pp. 511-12 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)) ("[B]ased upon the balancing test set forth in *Nixon* and applied in *IDT* and *Webster Groves*, the district court did not abuse its discretion in deciding that the documents should remain sealed."); *see also In re Bair Hugger*, 9 F.4th at 790-92 (MDL court did not abuse discretion by sealing certain documents containing sensitive business information which played negligible role in court's analysis); *Seidl*, 799 F.3d at 994 (8th Cir. 2015) (applying balancing test to conclude

district court did not abuse discretion by sealing deposition excerpts divulging attorney work product where no substantial public intertest in unsealing the record was proffered); *IDT Corp.*, 709 F.3d at 1224 (denying public interest group's motion to unseal civil antitrust complaint involving patented technologies because the possible harm in unsealing outweighed the public interest group's generalized interest in the complaint); *Webster Groves*, 898 F.2d at 1377 (newspaper publisher's interest in unsealing court's file in case between public school district and fourteen-year-old disabled student was "clearly outweighed by [student's] privacy interest and the state's interest in protecting minors from the public dissemination of hurtful information"); *Webbe*, 791 F.2d at 106-07 (no abuse of discretion by court's determination Webbe's constitutional right to a fair trial outweighs television station's common law right of access as to request for copies of audio tapes admitted into evidence for broadcasting to the public).

Furthermore, it is necessary to consider whether redaction of certain information is a reasonable and practicable alternative to sealing materials entirely. *IDT Corp.*, 709 F.3d at 1224-25 (remanding case for district court to assess whether redaction of confidential business information is practicable). Portions of a judicial record "may be amenable to public access without jeopardizing the confidentiality of sensitive information." *Id.* at 1224. "On the other hand, confidential information may be so embedded in a pleading that line-by-line redaction is impossible, or redaction might be insufficient to protect the interests that justify sealing." *Id.* (internal citations omitted); *see Flynt II*, 885 F.3d at 512 (district court did not abuse discretion in determining after *in camera* review that redaction of documents in question would not be possible to keep sensitive identifying information confidential).

In that regard, Federal Rule of Civil Procedure 5.2 provides as follows:

The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record.

Fed. R. Civ. P. 5.2(d). In addition:

> For good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court.

Fed. R. Civ. P. 5.2(e). Finally:

> A person making a redacted filing may also file an unredacted copy under seal. The court must retain the unredacted copy as part of the record.

Fed. R. Civ. P. 5.2(f). As with all rules of procedure, Rule 5.2 "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

At this point, as presently presented by the parties, it would be unjust, imprudent, and premature to definitively determine whether the "material in question" or "items" as referenced by the parties should be maintained under seal, with or without redaction, or at all. Foremost, those materials have not even been filed as a "judicial record" or otherwise filed on the Court's docket. Nor have the "material in question" or "items" produced by the City, as referenced by the parties, been defined with any specificity or clarity. It is undeterminable at this juncture and under the present record whether any of the material or information in dispute will either "directly affect an adjudication" or play a negligible role "in the exercise of Article III judicial power." *See IDT Corp.*, 709 F.3d at 1223-24. It is also undeterminable at this juncture under the present submissions of the parties whether redaction is a reasonable, practicable alternative to sealing the entirety of any of the material. *Id.* at 1224-25.

Thus, this Court refrains from making a broad, definitive determination on the "fighting issue" as characterized by Woods and urged by Defendants as to whether "Woods *must* file under seal legal papers that *incorporate* materials from the purportedly confidential video and investigative reports." Dkt. 19 pp. 2-3 (emphasis added). That is a determination for Woods'

counsel, especially as to Iowa statutory law applicable to obtaining such materials and the provisions of the stipulated protective order entered by another court. Again, the specific material or information Woods intends to "incorporate" into filings in this case is unknown.

However, to the extent Woods' counsel believes submission of any such material or information should be filed under seal in response to the pending motion to dismiss, the Court grants Woods' *leave* to do so, provisionally subject to review and further consideration and order of the Court. In that regard, Woods is not foreclosed from later moving to unseal any such material or information as the case progresses and merit-based decisions are made by the Court. Such is the normal, appropriate process for submission of materials or information to which confidentiality issues exist and allows for the efficient, prudent progression of litigation, including as to an ultimate decision as to public disclosure of such materials under the well-established principles set forth by the Supreme Court and Eighth Circuit which are binding precedent for this Court. Such leave applies solely to submission of the asserted confidential material or information by Woods as to the pending motion to dismiss and not to any other potential future submissions such as dispositive motions or during trial, or submissions by Defendants. The parties must adhere to the requirements of Local Rule 5(c) to obtain leave prior to filing any other material or information under seal.

### III. MOTION TO INTERVENE

As noted above, the Iowa Freedom of Information Council seeks to intervene in this case "for the limited purpose of resisting entry of the protective and sealing order that Defendants seek and to secure and maintain public access to judicial records filed or considered in connection with substantive or merits-based motions or rulings in this case." Dkt. 20 ¶ 26. Given the Court's determination above to deny Defendants' motion for a protective order as requested, the "limited purpose" expressed by the Council is rendered moot. But even if not, the Council has not

established sufficient grounds for intervention in this matter, especially at the present stage of the proceedings, and as to the broad relief being requested.

The Council contends "intervention here is appropriate as a matter of right, or because permissive intervention grounds exist" under Federal Rule of Civil Procedure 24. *Id.* ¶ 23. Rule 24(a) governs the intervention of right, providing as follows:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Rule 24(b) governs permissive intervention, providing as follows:

> On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Council has not established under fact or legal authority entitlement to intervention as a matter of right under Rule 24(a). The Council's assertion as such is void of merit and legal support. And while the Council cites caselaw in support of requesting permissive intervention under Rule 24(b), such reliance is misplaced.

The Eighth Circuit has held "permissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking *access* to judicial records in civil cases." *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (*Flynt I*) (emphasis added). "Normally, parties seeking permissive intervention pursuant to Rule 24(b) must show: (1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main

action have a question of law or fact in common." *Id.* p. 966. However, as explained by the Eighth

Circuit, "where a party is seeking to intervene in a case for the limited purpose of *unsealing* judicial

records, . . . 'there is no reason to require such a strong nexus of fact or law.'" *Id.* p. 967 (quoted

citation omitted) (emphasis added). "Instead, in such cases, it is the public's interest in the

confidentially of the judicial records that" constitutes a question of law in common between the

parties and the intervener. *Id.*

But in contrast to *Flynt I*, the Council is not seeking to intervene in this case for the purpose

of *unsealing* judicial records: no filings have been filed under seal by the parties or placed under

seal by the Court. As already emphasized, the "material in question" was obtained prior to and

outside the context of this litigation. And it is yet to be seen if any filings will be made under seal

by any party and permitted to remain under seal by the Court after full procedural progression and

consideration under the well-established principles set forth by the Supreme Court and Eighth

Circuit. Caselaw cited by the Council does not support its requested predetermination of such

matters which ultimately may not even result in public access being restricted. Nor does such case

law support the request for the broad, premature "declaratory" relief sought by the Council.

In that regard, the Council asserts "controlling law supports Movant's position, warrants

granting it intervenor status, calls for entry of an order declaring that no protective and sealing

order in this matter shall shield federal judicial records (as defined in *Steele v. City of Burlington*,

334 F.Supp.3d 972, 981-82 (S.D. Iowa 2018)) or evidence received by the Court from public

access, copying, and review." Dkt. 20 ¶ 7. The Council notes it "successfully intervened in the

*Steele* case." *Id.* ¶ 10. But contrary to the Council's assertion, the *Steele* case does not support the

entry of a broad "order declaring that no protective order and sealing order . . . shall shield federal

judicial records" in this, or any other, case prior to any court records or evidence being submitted

by parties under seal or maintained under seal by the court.

In *Steele*, "[e]arly in the case, the parties agreed to the entry of a Protective Order to avoid public disclosure of some case documents." *Steele*, 334 F.Supp.3d at 975. After the case progressed over the following 9 months,

> the parties filed cross-motions for summary judgment. Consistent with their Protective Order, the parties' briefs and other documents relating to the cross-motions for summary judgment were filed under seal. On February 24, 2018, Plaintiffs filed a motion to unseal the summary judgment record. The parties' briefs filed in support of and in resistance to Plaintiffs' motion to unseal were filed under seal. On May 24, 2018, the Court held a hearing on the cross-motions for summary judgment. On June 5, 2018, prior to the Court's ruling on the pending motions, counsel notified the Court that the case had settled. Thus, the Court did not ultimately decide the motions, and on June 6, 2018, all deadlines and pending motions before the Court were terminated.

*Id.* at 975-76.

On June 12, 2018, the Council and another individual filed a Motion to Intervene With Respect to Sealed Court Records And to Unseal and Make Public All Court Filings, Including Summary Judgment Motions, Pleadings, Briefs, and Evidence. (Case No. 3:16-cv-00105-JEG-SBJ Dkt. 79). Citing to *Flynt I*, the Court permitted the Council "to intervene under Rule 24(b) for the limited purpose of *moving to unseal the judicial records* in this case." *Id.* p. 5 (emphasis added). The Court then conducted a hearing on the request to unseal all the court filings and determined the documents filed in conjunction with the parties' "cross-motions for summary judgment are judicial records to which the common-law presumption of access attaches." *Steele*, 334 F.Supp.3d at 979. On the other hand, the Court determined the prior motion to unseal filed by plaintiff and the accompanying briefs "are not judicial records to which the common-law presumption of access attaches." *Id.* As for the summary judgment records, the Court proceeded with an in-depth consideration of the weight of the common-law presumption of access and countervailing reasons for nondisclosure then ultimately determined the "balance of interests" weighed in favor of unsealing the summary judgment records. *Id.* at 979-85. Before doing so, the Court allowed

defendants to propose redactions of certain limited information. *Id.* at 985. The Court approved proposed redactions and subsequently unsealed redacted versions of both video and documents submitted in relation to the summary judgment motions. (Case No. 3:16-cv-00105-JEG-SBJ Dkt. 98, 100).

Clearly, the *Steele* case does not support the Council's assertion it should be permitted to intervene in this case at the current pre-answer stage when no filings have been filed under seal by the parties or placed under seal by the Court. And even more clearly, the *Steele* case does not support the Council's request for the entry of a broad "order declaring that no protective order and sealing order . . . shall shield federal judicial records" at this stage or any other point of this litigation. Also, clearly, the Council was not even successful with its broad request in *Steele* to "make public all court filings."[1]

As established by *Flynt I* and applied in *Steele*, permissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking *access* to judicial records; it is not a proper avenue for seeking broad, premature "declaratory" relief as requested by the Council in this case. Based on the principles established by the Supreme Court and Eighth Circuit set forth above and again applied in *Steele*, the determination of public access to any specific judicial record once

---

[1] Other caselaw cited by the Council to support its requested intervention in this case also, clearly, misses the mark. For example, in the case *In re Iowa Freedom of Info. Council*, 724 F.2d 658 (8th Cir. 1983), the Eighth Circuit denied the Council's petition for a writ of mandamus directing the District Court to release all portions of a transcript from a contempt hearing involving a lawyer. *Id.* at 659. The Eighth Circuit determined that a sealed portion of the transcript contained trade secrets "and that it was necessary to deny release of this portion of the transcript in order to protect property rights in these secrets." *Id.* The Eighth Circuit found "the law justifies the steps taken by the District Court to avoid the destruction of these property rights" and noted "the courts must proceed cautiously and with due regard to the uniqueness of the particular facts before them." *Id.* at 664. The Eighth Circuit's opinion not only fails to support the Council's requested intervention here under Rule 24 and its requested broad declaratory order but, instead, supports this Court's intention to proceed cautiously step-by-step under well-established precedent and rules of procedure to serve both the interests of the parties themselves along with the interests of the public.

filed requires a well-established procedural progression which has not yet begun in this litigation. While acknowledging that "*Steele* provides a roadmap to the review and result that should occur here," the Council fails to recognize the journey here has not even started.

On that point, the Council has also not shown it is entitled under any legal authority to intervene and remain in this case "to secure and maintain public access to judicial records." This Court is bound by and adheres to the well-established principles established by the Supreme Court and Eighth Circuit, along with applicable rules of procedure, as to maintaining public access to its docket while allowing appropriate leave for parties to submit materials and information under seal provisionally, subject to review and further consideration and order, and utilizing redactions as a reasonable and practicable alternative to sealing materials entirely. In addition, contrary to the Council's assertion "that the litigants cannot adequately represent" the interests of public access to judicial records, Woods and her counsel have already done so in successfully resisting Defendants' motion for a protective order. And the Court expects Woods and her counsel to continue such efforts "to secure and maintain public access to judicial records" as the case proceeds. While the Council maintains its intervention will not cause "undue delay," the current motion itself required fairly significant time to review and consider the purported "controlling law" which failed to support the requested intervention and broad declaratory relief sought by the Council thereby already delaying this litigation.

For all those reasons, the Motion to Intervene (Dkt. 20) must be denied.[2]

---

[2] The Council also failed to submit any affidavits or evidence of any kind as required by Local Rule 7(b)(4) to support numerous facts set forth within its motion and supporting brief. The Council's broad request for the Court to take judicial notice pursuant to Federal Rule of Evidence 201 as to its "factual recitation" is without merit and rejected by the Court. As represented by the parties in this case within the complaint and pending motion to dismiss, many facts at issue in this case are "subject to reasonable dispute." Fed. R. Evid. 201(b).

## IV. CONCLUSION

As set forth above, Defendants' Motion for Protective Order (Dkt. 18) and The Iowa Freedom of Information Council's Motion to Intervene (Dkt. 20) are denied. Plaintiff has until May 7, 2024, to respond to Defendants' Motion to Dismiss (Dkt. 10).

**IT IS SO ORDERED.**

Dated April 23, 2024.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE