**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| MONICA WOODS, as Administrator of the Estate of T.J., Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  4:23-cv-00520 |
| CITY OF DES MOINES a Municipal Corporation; DANA WINGERT in his Official Capacity as Chief of Police for the City of Des Moines, Iowa; THOMAS GARCIA, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa; NOAH BOLLINGER, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa; and ZACHARY DUITSCHER, Individually and in his Official Capacity as a Police Officer for the City of Des Moines, Iowa, | ) ) ) ) ) ) ) ) ) ) ) ) ) | PLAINTIFF'S FIRST AMENDED & SUBSTITUTED COMPLAINT |
| Defendants. | ) | |

**AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff MONICA WOODS, as Administrator of the Estate of, T.J., Deceased, by and through her attorneys LAWRENCE H. HYMAN and JACOB M. OETH, and complaining of the Defendants, CITY OF DES MOINES and DES MOINES Police Officers THOMAS GARCIA, NOAH BOLLINGER, and ZACHARY DUITSCHER, states as follows.

**INTRODUCTION**

1.      This action, arising out of the shooting death of T_____, J_____ ("T.J.")[1] caused by the Defendant Officers, is brought pursuant to 42 U.S.C. section 1983 to redress the deprivation under color of law of Decedent's rights as secured by the United States Constitution.

---

[1]  Because the decedent is a minor, he is referred to by his initials pursuant to Local Rule 10(g)(3).

2.      On December 26, 2022, at the age of 16 years old, T.J. was killed by the unlawful use of deadly force by Defendants Des Moines Police Officers acting under color of law as police for Defendant City of Des Moines.

3.      Jurisdiction of this Court is invoked under 28 U.S.C. section 1331 and 28 U.S.C. section 1343(3) and the aforementioned constitutional and statutory provisions.

4.      All events and actions referenced in the Complaint occurred in the Southern District of Iowa, and therefore venue is proper under 28 U.S.C. section 1391(b).

## PARTIES

5.      T.J., until his time of death, was a resident of Des Moines, Polk County, and a citizen Iowa.

6.      Monica Woods ("Woods") is an individual residing in Polk County and a citizen of Iowa, and has been appointed as Administrator of the Estate of T.J., Deceased, in the Polk County District Court (Case No. 05771 ESPR081070) and is the mother of the decedent.

7.      Defendant Dana Wingert ("Defendant Wingert") is believed to be a citizen and a resident of the State of Iowa and at all times relevant to the events complained herein, was employed by the City of Des Moines as a police officer and an agent of the City of Des Moines as the Chief of Police of the Des Moines Police Department. Defendant Wingert is sued in his official capacity.

8.      Defendant Thomas Garcia ("Defendant Garcia") is believed to be a citizen and resident of the State of Iowa and at all times relevant to the events complained herein, was employed by the City of Des Moines as a police officer and an agent of the City of Des Moines on duty, acting within the scope of his employment and under color of state law. Defendant Garcia is sued individually and in his official capacity.

2

9.      Defendant Noah Bollinger ("Defendant Bollinger") is believed to be a citizen and resident of the State of Iowa and at all times relevant to the events complained herein, was employed by the City of Des Moines as a police officer and an agent of the City of Des Moines on duty, acting within the scope of his employment and under color of state law. Defendant Bollinger is sued individually and in his individual capacity.

10.     Defendant Zachary Duitscher ("Defendant Duitscher") is believed to be a citizen and resident of the State of Iowa and at all times relevant to the events complained herein, was employed by the City of Des Moines as a police officer and an agent of the City of Des Moines on duty, acting within the scope of his employment and under color of state law. Defendant Duitscher is sued individually and in his individual capacity.

11.     Defendant City of Des Moines, Iowa ("Defendant City of Des Moines") is a municipal corporation organized and authorized to operate under the laws of Iowa. Defendant City is responsible for maintaining and operating the Des Moines Police Department ("DMPD") and at all relevant times was the employer of the Defendant Officers.

## FACTUAL BACKGROUND

### I.      Reckless Shooting of T.J..

12.     All events and actions complained of herein occurred in the City of Des Moines, Polk County, Iowa.

13.     Plaintiff Monica Woods is the surviving mother of T.J. and resides in Des Moines, Iowa.

14.     Howard Jenkins ("Jenkins") is the surviving father of T.J., who prior to his death of the minor, financially supported the deceased minor and resides in Minnesota.

15.     T.J. resided in Des Moines, Iowa with relatives in an apartment complex located at 400 East McKinley Ave.

16.     On December 26, 2022, at approximately 12:27 A.M., T.J.'s stepfather Curtis Woods made a call to the City of Des Moines emergency 911 number stating that T.J., a 16-year-old boy, was outside Mr. Wood's apartment at 400 East McKinley Ave., in possession of a handgun and had earlier pointed it at Mr. Woods.

17.     At approximately 12:30 A.M., multiple officers responded to the call at the apartment complex located at 400 East McKenley Ave.

18.     Some of the responding officers saw T.J. outside a building near that location, and then observed him enter one of the apartments.

19.     Defendant Garcia and Defendant Bollinger ran into the apartment T.J. had entered with their handguns drawn, pointed them at T.J. and shouted repeatedly at him to drop his handgun.

20.     The officers first made contact with T.J. as they stood in the hallway, while he remained several feet away in the living room:



21.     Defendant Duitscher then forcibly entered the apartment by breaking the glass on the sliding back door behind where T.J. was standing, and Officer Nicholas Howard followed him into the apartment:



22.     T.J. was startled by the glass breaking and retreated towards the northeast corner of the living room of the apartment.

23.     The Defendants moved to within three to six feet of T.J., continuously shouting at him to drop the handgun, and shined lights on him from several directions while keeping their guns pointed at him.

24.     Approximately ninety seconds after the offices made initial contact with T.J., he pointed to the weapon and told the officers, "I'm gonna put this down":



25.     T.J. repeatedly asked the officers to turn off their lights.

26.     At one point, he told the officers, "Them flashlights are triggers."

27.     Thereafter, T.J. stated, "My brother just died.  My brother just died to a gun."  As the encounter continued, T.J. told the officers, "Y'all can keep the guns aimed at me.  Just take the lights off."

28.     While Defendant Bollinger began to engage T.J. in conversation, the other Defendants continued to shout and made demands of T.J. to drop his handgun.  The Defendants were still in the living room of the apartment arranged around T.J. between three and six feet from him while he stood in a corner.

29.     T.J. pulled out his cell phone with his left hand and began to look into the phone as he held it in front of him:



30.     After a few seconds, T.J. put the phone back into his pocket and said, "I wanna die.  I wanna be with my brother."

31.     Officers Howard and Defendant Duitscher turned off the lights at the ends of their guns while Defendants Garcia and Bollinger kept their lights on.

32.     T.J. grabbed the cell phone from his pocket and looked down while holding it in his left hand:



33.     While looking at his phone, T.J. began raising his right arm, holding the handgun in his right hand with the muzzle pointed upward toward his head.

34.     At all times while raising his hand, the muzzle of the handgun was pointed to T.J.'s immediate left and not in the direction of any officer.

35.     At the point in which T.J.'s arm was across his stomach and chest, with the muzzle of the gun still pointed toward his head, Defendant Duitscher fired two shots at T.J., causing him to double over, fall to the ground, and drop his handgun.

36.     Defendants Bollinger and Garcia immediately fired multiple additional shots at T.J. after Defendant Duitscher shot T.J., striking him as well.

37.     Officer Howard, who was standing farthest to T.J. left, did not fire any shots.

38.     As a result of the acts of Defendants Duitscher, Bollinger and Garcia in shooting T.J., riddling his body with fourteen bullets which struck him in the face, head, neck, shoulder, chest, arm, back, thigh, and hand, he was killed.

39.     At the time Defendant Duitscher fired the shots that caused T.J. to fall to the ground, T.J. was not looking at Duitscher.

40.     T.J. had been looking directly down at the phone he was holding in his left hand for at least seven seconds before Defendant Duitscher fired his first shot and never looked up from his phone before the shots were fired.

41.     Although T.J. moved his right hand in which he was holding the handgun around during the encounter, at all times for more than two minutes before he was shot until he began to raise it toward his head, he kept the muzzle pointed directly down at the floor.

42.     He never pointed the gun at any of the Defendants, nor did he have a finger on the trigger of his handgun.

43.     At the time Defendant Duitscher fired the shots that caused T.J. to fall to the ground, T.J. did not have a finger on the trigger of his handgun.

44.     At no time before or after Defendant Duitscher, Defendant Bollinger, and Defendant Garcia fired the shots at T.J. did he attempt to fire his handgun at anyone in the room.

45.     At no time before Defendant Duitscher, Defendant Bollinger or Defendant Garcia fired the shots at T.J. did he make any statement that he intended to harm any other person, including any of the Defendants in the room.

46.     Approximately four minutes elapsed from the time in which Defendants Garcia and Bollinger first made contact with T.J. until the time that Defendant Duitscher fired his shots.

47.     The acts of shooting T.J. were a reckless, unjustified and unlawful use of deadly force by the Defendants, which was a violation of his Fourth Amendment constitution rights.

48.     T.J. is survived by his parents, Monica Woods and Howard Jenkins, his next of kin.

49.     Monica Woods and Howard Jenkins have suffered and will continue to suffer grief, emotional pain and suffering, a loss of society, comfort, love, affection, support, protection, and other damages that have resulted from their son's death.

50.     T.J. died as a result of these gunshot wounds.

**II.   Defendants' Lack of Training, and Failure to Use De-escalation Policy Caused the Death of T.J..**

51.     The City of Des Moines, through its Police Department, issued general orders which were approved by the Chief of Police. Chapter 5 of the Des Moines Police Department General Orders, which were published on September 12, 2018 and revised on October 3, 2022, establishes guidelines for de-escalation prior to the use of force. The purpose of the de-escalation policy was "an attempt to stabilize a situation and reduce the immediacy of a threat so that more time, options, and resources can be called upon to resolve the situation without the use of force." (Chapter 5, Des Moines Police Department General Orders, page 1).

52.     On and before December 26, 2022, the City of Des Moines was aware of the importance of teaching the necessary skills to the police officers it employed to accurately assess potentially violent confrontations and, when feasible, defuse them with de-escalation techniques to avoid the use of deadly force.

53.     On and before December 26, 2022, the City of Des Moines was aware of the importance of teaching the necessary skills to the police officers it employed to use deadly force only in a lawful manner to avoid violation of the constitutional rights of its residents.

54.     The systematic failure by the City of Des Moines to adequately train its police officers in de-escalation techniques and its failure to adequately supervise its police officers in de-escalation techniques have contributed to the continued use of unlawful deadly force by the Des Moines Police Department in violation of the constitution rights of its residents, including T.J.

55.     The systematic failure by the City of Des Moines to adequately train its police officers in the lawful use of deadly force and its failure to adequately supervise its police officers

in the lawful use of deadly force have contributed to the continued use of unlawful deadly force by the Des Moines Police Department in violation of the constitution rights of its residents, including T.J.

56. The death of T.J. is a direct result of the failure of the City of Des Moines to properly train and supervise its officers in de-escalation techniques, and in the lawful use of deadly force.

**COUNT I**
**Civil Rights Violation Pursuant to 42 U.S.C. Section 1983**
**Violation of Fourth Amendment to the United States Constitution**
**(Against Defendant Thomas Garcia)**

57. The Plaintiff repleads all preceding paragraphs as though fully set forth herein.

58. Defendant Garcia is a person for the purposes of a Section 1983 action for damages.

59. At all times material hereto, Defendant Garcia's actions and/or omissions were made under the color of authority and law as a law enforcement officer for the City of Des Moines, Iowa.

60. On December 26, 2022, Defendant Garcia violated T.J.'s clearly established constitutional rights by his unlawful use of deadly force when he shot T.J. eight times in his home. This use of excessive deadly force was unnecessary under the circumstances.

61. Defendant Garcia violated T.J.'s Fourth Amendment right under the United States Constitution to be free from unreasonable seizures.

62. The use of deadly force Defendant Garcia employed while confronting T.J. was excessive and unlawful.

63.     Defendant Garcia demonstrated a deliberate indifference to and/or reckless disregard for T.J.'s civil and constitutional rights by repeatedly firing his gun at T.J. when such conduct was excessive and an unlawful use of deadly force.

64.     Defendant Garcia's actions were willful, wanton, unlawful, and in gross disregard of T.J.'s civil rights, justifying an award of punitive damages.

65.     Defendant Garcia's conduct put T.J. at risk of serious, immediate, and proximate harm, and was a direct cause of his death.

66.     As a direct and proximate result of Defendant Garcia's illegal and unjustified conduct, the Plaintiff was injured and is entitled to recover damages for:

a.      The deprivation of the deceased's constitutional rights;

b.      The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.      The death and funeral expenses as well as interest on the cost of funeral and burial of T.J. for the period between the date of his premature death and the date on which he could have been expected to die;

d.      Physical and mental pain and suffering of T.J.;

e.      The present value of loss of services and support;

f.      All consequential damages;

g.      All actual and compensatory damages including, but not limited to, past pain and suffering and medical expenses, and

h.      Any other damages allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant Garcia as follows:

a.      Actual, compensatory, consequential, and all other allowable damages against Defendant Garcia in an amount as yet to be determined;

b.      Plaintiff's costs in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988;

c.      Punitive damages, and

d.      Such other and further relief as the Court deems just and equitable.

**COUNT II**
**Civil Rights Violation Pursuant to 42 U.S.C. Section 1983**
**Violation of Fourth Amendment to the United States Constitution**
**(Against Defendant Noah Bollinger)**

67.     The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

68.     Defendant Bollinger is a person for the purposes of a Section 1983 action for damages.

69.     At all times material hereto, Defendant Bollinger's actions and/or omissions were made under the color of authority and law as a law enforcement officer for the City of Des Moines, Iowa.

70.     On December 26, 2022, Defendant Bollinger violated T.J.'s clearly established constitutional rights by using excessive deadly force when he shot T.J. three times in his home. This use of excessive deadly force was unnecessary under the circumstances.

71.     Defendant Bollinger violated T.J.'s Fourth Amendment right under the United States Constitution to be free from unreasonable seizures.

72.     The use of deadly force Defendant Bollinger employed while confronting T.J. was excessive and unlawful.

73.     Defendant Bollinger demonstrated a deliberate indifference to and/or reckless disregard of T.J.'s civil and constitutional rights by repeatedly firing his gun at T.J. when such conduct was excessive and an unlawful use of deadly force.

74.     Defendant Bollinger's actions were willful, wanton, unlawful, and in gross disregard of T.J.'s civil rights, justifying an award of punitive damages.

12

75.     Defendant Bollinger's conduct put T.J. at risk of serious, immediate, and proximate harm, and caused his death.

76.     As a direct and proximate result of Defendant Bollinger's illegal and unjustified conduct, the Plaintiff was injured and is entitled to recover damages for:

 a. The deprivation of the deceased's constitutional rights;

 b. The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

 c. The death and funeral expenses as well as interest on the cost of funeral and burial of T.J. for the period between the date of her premature death and the date on which he could have been expected to die;

 d. Physical and mental pain and suffering of T.J.;

 e. The present value of loss of services and support;

 f. All consequential damages;

 g. All actual and compensatory damages including, but not limited to, past pain and suffering and medical expenses, and

 h. Any other damages allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant Bollinger as follows:

 a. Actual, compensatory, consequential, and all other allowable damages against Defendant Bollinger in an amount as yet to be determined;

 b. Plaintiff's costs in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988;

 c. Punitive damages, and

 d. Such other and further relief as the Court deems just and equitable.

**COUNT III**
**Civil Rights Violation Pursuant to 42 U.S.C. Section 1983**
**Violation of Fourth Amendment to the United States Constitution**
**(Against Defendant Zachary Duitscher)**

77.     The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

78.     Defendant Duitscher is a person for the purposes of a Section 1983 action for damages.

79.     At all times material hereto, Defendant Duitscher's actions and/or omissions were made under the color of authority and law as a law enforcement officer for the City of Des Moines, Iowa.

80.     On December 26, 2022, Defendant Duitscher violated T.J.'s clearly established constitutional rights by using excessive deadly force when he shot T.J. three times in his home. This use of deadly force was unnecessary under the circumstances.

81.     Defendant Duitscher violated T.J.'s Fourth Amendment right under the United States Constitution to be free from unreasonable seizures.

82.     The use of deadly force Defendant Duitscher employed against T.J. was excessive and unlawful.

83.     Defendant Duitscher demonstrated a deliberate indifference to and/or reckless disregard of T.J.'s civil and constitutional rights by repeatedly firing his gun at T.J. when such conduct was excessive and an unlawful use of deadly force

84.     Defendant Duitscher's actions were willful, wanton, unlawful, and in gross disregard of T.J.'s civil rights, justifying an award of punitive damages.

85.     Defendant Duitscher's conduct put T.J. at risk of serious, immediate, and proximate harm, and caused his death.

14

86.     As a direct and proximate result of Defendant Duitscher's illegal and unjustified conduct, the Plaintiff was injured and is entitled to recover damages for:

a.     The deprivation of the deceased's constitutional rights;

b.     The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.     The death and funeral expenses as well as interest on the cost of funeral and burial of T.J. for the period between the date of her premature death and the date on which he could have been expected to die;

d.     Physical and mental pain and suffering of T.J.;

e.     The present value of loss of services and support;

f.     All consequential damages;

g.     All actual and compensatory damages including, but not limited to, past pain and suffering and medical expenses, and

h.     Any other damages allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant Duitscher as follows:

a.     Actual, compensatory, consequential, and all other allowable damages against Defendant Bollinger in an amount as yet to be determined;

b.     Plaintiff's costs in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988;

c.     Punitive damages, and

d.     Such other and further relief as the Court deems just and equitable.

**COUNT IV**
**Civil Rights Violation Pursuant to 42 U.S.C. Section 1983**
**Violation of Fourth Amendment to the United States Constitution**
**(Against Defendant City of Des Moines)**

87.     The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

88.     Defendant City of Des Moines, Iowa are persons for the purposes of Section 1983 action for damages.

89.     Prior to the events described *supra*, Defendant City of Des Moines failed to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for lawful use of deadly force within the Des Moines Police Department, particularly in regard to if and/or how to use them in a residential home.

90.     Prior to the events described *supra*, Defendant City of Des Moines failed to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for de-escalation techniques to use prior to the use of deadly force, particularly in regard to if and/or how to use them in a residential home.

91.     Prior to the events described *supra*, Defendant City of Des Moines' failure to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for lawful use of deadly force was done with reckless disregard for the constitutional rights of its citizens, including T.J., in circumstances similar to those confronted by its officers on December 26, 2022.

92.     Prior to the events described *supra*, Defendant City of Des Moines' failure to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for de-escalation techniques to use prior to the use of deadly force was done with reckless disregard for the constitutional rights of its citizens, including T.J., in circumstances similar to those confronted by its officers on December 26, 2022.

93.     Said acts and/or omissions of Defendant City of Des Moines were done with deliberate indifference to and/or willful and wanton disregard for the rights and safety of citizens, including T.J.

94.     As a direct and proximate result of one or more of said acts and/or omissions by Defendant City of Des Moines, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, was injured and is therefore entitled to recover damages for:

    a.    The deprivation of the deceased's constitutional rights;

    b.    The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

    c.    The death and funeral expenses as well as interest on the cost of funeral and burial of T.J. for the period between the date of his premature death and the date on which he could have been expected to die;

    d.    Physical and mental pain and suffering of T.J.;

    e.    The present value of loss of services and support;

    f.    All consequential damages;

    g.    All actual and compensatory damages including, but not limited to, past pain and suffering and medical expenses, and

    h.    Any other damages allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant City of Des Moines as follows:

    a.    Actual, compensatory, consequential, and all other allowable damages against Defendant Bollinger in an amount as yet to be determined;

    b.    Plaintiff's costs in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. Section 1988;

    c.    Punitive damages; and

    d.    Such other and further relief as the Court deems just and equitable.

**COUNT V**
**Civil Rights Violation Pursuant to 42 U.S.C. Section 1983**
**Violation of Fourth Amendment to the United States Constitution**
**(Against Defendant Dana Wingert)**

95.    The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

96.    Defendant Wingert is a person for the purposes of Section 1983 action for damages.

97.    Prior to the events described *supra*, Defendant Wingert failed to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, or customs for lawful use of deadly force within the Des Moines Police Department, particularly in regard to if and/or how to use them in a residential home.

98.    Prior to the events described *supra*, Defendant Wingert failed to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, or customs within the Des Moines Police Department for the proper use of de-escalation techniques prior to the use of deadly force, particularly in regard to if and/or how to use them in a residential home.

99.    Prior to the events described *supra*, Defendant Wingert's failure to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for proper use of deadly force was done with reckless disregard for the constitutional rights of its citizens, including T.J., in circumstances similar to those confronted by its officers at Lange's home on December 26, 2022.

100.    Prior to the events described *supra*, Defendant Wingert's failure to establish and/or maintain, and/or enforce official city and/or county policies, patterns, practices, and/or customs for proper use the proper use of de-escalation techniques prior to the use of deadly force was done with reckless disregard for the constitutional rights of its citizens, including T.J., in circumstances similar to those confronted by its officers at Lange's home on December 26, 2022.

101.    Said acts and/or omissions by Defendant Wingert amounted to deliberate indifference and/or willful and wanton disregard to the constitutional rights and safety of citizens, including T.J.

102.    As a direct and proximate result of one or more of said acts and/or missions by Defendant Wingert, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, was injured and is therefore entitled to recover damages for:

a.    The deprivation of the deceased's constitutional rights;

b.    The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.    The death and funeral expenses as well as interest on the cost of funeral and burial of T.J. for the period between the date of his premature death and the date on which he could have been expected to die;

d.    Physical and mental pain and suffering of T.J.;

e.    The present value of loss of services and support;

f.    All consequential damages;

g.    All actual and compensatory damages including, but not limited to, past pain and suffering and medical expenses, and

h.    Any other damages allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant City of Des Moines as follows:

a.    Actual, compensatory, consequential, and all other allowable damages against Defendant Bollinger in an amount as yet to be determined;

b.    Plaintiff's costs in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. section 1988;

c.    Punitive damages, and

d.    Such other and further relief as the Court deems just and equitable.

**COUNT VI**
**Wrongful Death**
**(Against Defendant Thomas Garcia)**

103.    The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

104.    Defendant Garcia owed a duty to the decedent to act with reasonable care for his physical well-being and safety.

105.    The Defendant owed the decedent a duty to exercise a reasonable degree of care and skill in the use of a reasonable degree of force pursuant to that duty.

106.    The Defendant breached such duties, which constitutes negligence.

107.    The Defendant's negligence was a proximate cause of the decedent's death.

108.    The law of negligence was clearly established at the time of Defendant Garcia's conduct.

109.    The Estate of T.J. has in the past and will in the future suffer and incur the damages as set forth above.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against the Defendant Thomas Garcia in an amount representing full and fair compensation for the injuries and damages as set forth above, for interest as allowed by law for the cost of this action, and for such other relief as may be just in the circumstances.

**COUNT VII**
**Wrongful Death**
**(Against Defendant Noah Bollinger)**

110.     The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

111.    Defendant Bollinger owed a duty to the decedent to act with reasonable care for his physical well-being and safety.

112.    The Defendant owed the decedent a duty to exercise a reasonable degree of care and skill in the use of a reasonable degree of force pursuant to that duty.

113.     The Defendant breached such duties, which constitutes negligence.

114.     The Defendant's negligence was a proximate cause of the decedent's death.

115.     The law of negligence was clearly established at the time of Defendant Bollinger's conduct.

116.     The Estate of T.J. has in the past and will in the future suffer and incur the damages as set forth above.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against the Defendant Noah Bollinger in an amount representing full and fair compensation for the injuries and damages as set forth above, for interest as allowed by law for the cost of this action, and for such other relief as may be just in the circumstances.

### COUNT VIII
### Wrongful Death
### (Against Defendant Zachary Duitscher)

117.     The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

118.     Defendant Duitscher owed a duty to the decedent to act with reasonable care for his physical well-being and safety.

119.     The Defendant owed the decedent a duty to exercise a reasonable degree of care and skill in the use of a reasonable degree of force pursuant to that duty.

120.     The Defendant breached such duties, which constitutes negligence.

121.     The Defendant's negligence was a proximate cause of the decedent's death.

122.     The law of negligence was clearly established at the time of Defendant Duitscher's conduct.

123.     The Estate of T.J. has in the past and will in the future suffer and incur the damages as set forth above.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against the Defendant Zachary Duitscher in an amount representing full and fair compensation for the injuries and damages as set forth above, for interest as allowed by law for the cost of this action, and for such other relief as may be just in the circumstances.

### COUNT IX
### Wrongful Death
### (Against Defendant Dana Wingert)

124.    The Plaintiff repleads all preceding paragraphs as if fully set forth herein.

125.    Defendant Wingert owed a duty to the decedent to act with reasonable care for his physical well-being and safety.

126.    The Defendant owed the decedent a duty to exercise a reasonable degree of care and skill in training and supervising Co-Defendants Gacia, Bollinger and Duitscher in the use of a reasonable degree of force in the exercise of their duties.

127.    The Defendant breached such duties, which constitutes negligence.

128.    The Defendant's negligence was a proximate cause of the decedent's death.

129.    The law of negligence was clearly established at the time of Defendant Wingert's conduct.

130.    The Estate of T.J. has in the past and will in the future suffer and incur the damages as set forth above.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against the Defendant Dana Wingert in an amount representing full and fair compensation for the injuries and damages as set forth above, for interest as allowed by law.

**COUNT X**
**Respondent Superior**
**(Against Defendant City of Des Moines and Defendant Dana Wingert)**

131.    At all times relevant, Defendant Garcia, Defendant Bollinger, and Defendant Duitscher were members of the Des Moines Police Department acting within the scope and authority of their employment under the command of Defendant Wingert.

132.    The Defendant City of Des Moines, as principal, is liable for the actions of its agents under the doctrine of respondent superior.

133.    Defendant Wingert, as principal, is liable for the actions of its agents under the doctrine of respondent superior.

134.    The doctrine of respondent superior was clearly established at the time of the officer's conduct.

WHEREFORE, the Plaintiff Monica Woods, as Administrator of the Estate of T.J., Deceased, prays for Judgment against Defendant City of Des Moines and Defendant Wingert in an amount in an amount representing full and fair compensation for the injuries and damages as set forth above, for interest as allowed by law for the cost of this action, and for such other relief as may be just in the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all claims stated in this Complaint.

Date:  May 20, 2024              Respectfully submitted

_____
GARY DICKEY, AT#0001999
Dickey, Campbell, & Sahag Law Firm, PLC
301 East Walnut, Suite 1
Des Moines, Iowa  50309
Tel:  (515) 288-5008, Fax:  (515) 288-5010
gary@iowajustice.com


/s/ Lawrence Hyman
_____
Lawrence Hyman
LAWRENCE H. HYMAN & ASSOCIATES, LTD.
111 W. Washington Street, Suite 1025
Chicago, Illinois  60602
Tel:  (312) 346-6766  Fax:  (312) 346-9688
hymanlaw@lhyman.com