IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF IOWA CENTRAL DIVISION

| | |
|---|---|
| MONICA WOODS, as Administrator of the Estate of T.J., Deceased,<br><br>Plaintiff,<br><br>v.<br><br>City of Des Moines; Dana Wingert; Thomas Garcia; Noah Bollinger, Zachary Duitscher,<br><br>Defendants. | Case No. 4:23-cv-00520<br><br><br>AMENDED<br>MOTION TO DISMISS<br>RESPONDING TO AMENDED PETITION |

**COME NOW THE DEFENDANTS, AND IN SUPPORT OF THIS MOTION TO DISMISS PURSUANT TO RULE OF FEDERAL PROCEDURE 12(b)(6), STATE:** The amended complaint sets forth the following amended facts that will be addressed[1]. Because large portions of the complaint have not changed, the City Defendants (City) incorporate the previous motion to dismiss with this amended motion to dismiss. This amended motion will address new or altered statements in the complaint. The first of those allegations are:

35. At the point in which T.J.'s arm was ~~parallel to the ground~~ across his stomach and chest, with the muzzle of the gun still pointed toward his head, Defendant Duitscher fired two shots at T.J., causing him to double over, fall to the ground, and drop his handgun.

42. He never pointed the gun at any of the Defendants ~~while simultaneously looking at any of them~~, nor did he have a finger on the trigger of his handgun.

(ECF 26, ¶¶ 35 & 42 May 14, 2024).

---

[1] The City does not concede these facts. They are and will be contested. However, for purposes of the motion to dismiss, the City is required to accept these allegations as true.

1

**DISMISSAL STANDARDS**

For Rule 12(b)(6) motions, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must draw reasonable inferences in plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015).

> Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the court to "draw on its judicial experience and common sense." *Id*. at 679, 682. The factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.

*Davis v. City of St. Louis, Mo.*, No. 4:22-CV-00902-SEP, 2023 WL 4684510, at *2 (E.D. Mo. July 21, 2023). "Although *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory." *Johnson v. King,* No. 4:19-CV-04111, 2020 WL 2873399, at *4 (W.D. Ark. May 14, 2020), <u>report and recommendation adopted,</u> No. 4:19-CV-4111, 2020 WL 2850391 (W.D. Ark. June 2, 2020), citing *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates,*

*L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

> In deciding a motion brought under Rule 12(b)(6), the court may consider certain materials outside the pleadings, including (a) "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,' " *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and (b) " 'materials that are part of the public record or do not contradict the complaint.' " *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Thus, the court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller*, 688 F.3d at 931 n.3 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

*Hopper v. City of Waterloo*, No. 22-CV-2031 CJW-KEM, 2023 WL 370608, at *2 (N.D. Iowa Jan. 6, 2023).

## ARGUMENT

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). "What this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The applicable standard in such cases is viewed from the totality of the circumstances and judged from the viewpoint of a reasonable officer -- irrespective of the officer's underlying intent or motivation. *McCoy v. City of Monticello*, 342 F.3d 842, 848 (8th Cir. 2003).

Qualified immunity is an immunity from suit rather than a mere defense to liability… it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As the Eighth Circuit has noted, "[t]he Supreme Court has generously construed qualified immunity to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Littrell*, 388 F.3d at 582. To overcome qualified immunity inquiry, Woods must establish that the defendants were "intentional or reckless, thereby shocking the conscience." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 672 (8th Cir. 2007) (citing *Wilson v. Lawrence County, Mo.*, 260 F.3d 946, 955-56 (8th Cir. 2001)). Mere negligence will not suffice. *Id.*

Courts use a two-part test when determining whether a lawsuit against an official may proceed under a qualified immunity assertion. First, the court must determine whether, "taken in the light most favorable to the party asserting the injury… the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must determine whether the right in question was "clearly established." *Id*. For the right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Buckley v. Rogerson*, 133 F. 3d 1125, 1128 (8th Cir. 1998).

As a consequence, a plaintiff is required to point to closely analogous cases or show that the right is so clear that no one thought it worthwhile to litigate the issue. *Dunn v. City of Elgin*, 347 F.3d 641, 650 (8th Cir. 2003). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007)

(quoting *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001)). Both of these questions are answered in the negative for the reasons set forth below.

    I.    <u>There was not a constitutional violation because the officers were justified in their use of lethal force</u>.

"The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). "While 'mere possession of a firearm' is not enough, this Court has recognized that an individual pointing a firearm at another or otherwise moving a firearm in a "menacing action" generally gives officers probable cause to use deadly force." *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (citing *Partridge v. City of Benton*, 929 F.3d 562, 566 (8th Cir. 2019))." "The reasonableness of [an officer's] use of deadly force is judged from the perspective of a reasonable officer on the scene, and not from the unknowable intentions of the victim". *Hernandez v. Jarman*, 340 F.3d 617, 624 (8th Cir. 2003).

According to the complaint, T.J. had earlier pointed the gun at his step-father, causing his step-father to call 911 to ask for assistance. After officers entered the apartment, T.J. moved the gun in his hand multiple times: toward the ground, toward his head, and parallel to the ground across his chest. It is important to consider how the petition's alleged facts depict the physical scene. The complaint states that T.J. was in the corner of the living room and he was surrounded by officers, specifically, the officers were "arranged around him" and were three to six feet away from him. Then T.J. lifted the gun to be across his torso. Now, plaintiff states that while his arm was crossed over his stomach and chest, it was also pointed at his head.

The video, should the court permit it to be filed under seal, speaks for itself. By virtue of that allegation, the plaintiffs admit that T.J. raised the gun while surrounded by law enforcement[2] who, as indicated in the petition, had asked and/or demanded multiple times that he put the gun down. Even with the amended language, this is an admission that T.J. was moving the gun around from being pointed down to being pointed up.

Plaintiffs allege that T.J. never said he was going to shoot anyone, that he was looking at his phone when he lifted the gun, and his finger wasn't on the trigger. None of these are required for an officer to use deadly force. "Officers may use deadly force when there is probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officers or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Officers were not required to wait until a gun was pointed right at them before they fired their guns. "In dangerous situations where an officer has reasonable grounds to believe that there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject actually points a weapon at the officer or others." *Yang v. City of Minneapolis*, 607 F. Supp. 3d 880, 891 (D. Minn. 2022), citing *Liggins v. Cohen*, 971 F.3d 798, 801 (8th Cir. 2020); *Sinclair v. City of Des Moines, Iowa*, 268 F.3d 594, 596 (8th Cir. 2001) ("[N]o constitutional or statutory right exists that would prohibit a police officer from using deadly force when faced with an apparently loaded weapon."). If there was a fact issue related to where the gun was pointed, we might be in a more difficult position. *Partridge v. City of Benton, Arkansas*, 70 F.4th 489 (8th Cir. 2023). There is not. The entire incident is recorded on video. But even based on the petition's stated facts, T.J. lifted the gun to his torso, parallel to the ground. By nature, that means the gun was pointed away from him at

---

[2] It is difficult to imagine how an individual who is surrounded by officers arranged all around him draws the gun into across his stomach and chest and not be pointing the weapon at someone. Nevertheless, the City must concede for a Motion to Dismiss that those two allegations both happened.

torso level, with officers arranged all around him. It was not pointed at his head or at the ground. It was pointed at any object that was torso-level in front of him. That is an imminent threat to the officers and others. For all these reasons, the officers did not commit a constitutional wrong in their use of lethal force under these circumstances.

>   II. <u>It was not clearly established that an officer is constitutionally barred from using lethal force when an individual points a gun at torso level when surrounded by officers who are 3-4 feet away, just because he wasn't looking at them or had his finger poised on the trigger.</u>

If this court finds that there was a federal constitutional right violated, the inquiry moves on the second prong of immunity analysis, regarding whether a right is clearly established. As summarized by the Supreme Court,

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658 (2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

*Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

> Clearly established law is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589–90 (internal quotation marks and citation omitted). "[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590. "It is not enough that the rule is suggested by then-existent precedent." *Id.* The "clearly established" standard, therefore, requires that a particular rule's contours be well defined at a "high 'degree of specificity.' " *Id.* (citation omitted). Courts should not "define clearly established law at a high level of generality" but should "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." *Id.* (citation omitted). The case need not be "directly on point," but should place the lawfulness of the officer's conduct

7

"beyond debate." *Id.* (citation omitted).

*Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019), citing *D.C. v. Wesby*, 583 U.S. 48, 61 (2018).

The undersigned could not locate case law in the Eighth Circuit that states officers may not use lethal force in a situation where a suspect moved a gun around, yet "never pointed the gun at any of the Defendants, nor did he have a finger on the trigger of his handgun." (ECF 26, May 14, 2024),33). This statement is a concession that T.J. pointed the gun at the officers—he just did it without having a finger on the trigger.

Otherwise stated, Woods is urging in her complaint that the officers had to wait until the gun was pointed at them and with a finger on the trigger. That cannot be correct in light of caselaw that states officers do not need to wait for a gun to be pointed at them, let alone that even when the gun is pointed at them, they are not in serious danger because a finger is not on the trigger. ["It is [ ] constitutionally reasonable for an officer to use deadly force when he has probable cause to believe that his own life is in peril." *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005); "[t]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (citing *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007); "the Fourth Amendment does not require omniscience.... Officers need not be absolutely sure ... of the nature of the threat or the suspect's intent to cause them harm-the Constitution does not require that certitude precede the act of self protection." *Elliott,* 99 F.3d at 644; *see also Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir. 1991); "During a short amount of time, the man put the gun in his mouth, 'and that immediately before he was shot, the gun was pointed upwards, near and toward [the man's] head… it "would have been virtually impossible

for the [deputy] to ascertain whether [the man's] gun was simply moving upward or it was coming down to be aimed at him again. *Thompson v. Salt Lake City*, 584 F3d. 1304, 1319 (10th Cir. 2009); it was not a constitutional violation when a suspect was "holding the shotgun chest high, angled across his body," and the man "was holding the gun as though he could lower it toward them and fire at any moment." *Id.* at 831. The officers fired after the man, who was "less than fifteen away from the [o]fficers when he entered the living room," ignored commands to drop the weapon and "continued to walk towards the [o]fficers." *Thompson v. City of Columbus,* 727 F.App'x 829, 838 (6th Cir. 2018) *and Grant v. Wilson*, No. 21-5642, 2022 WL 3500190, at *9 (6th Cir. Aug. 18, 2022).

A search of Westlaw[3] produced one case in the Eighth Circuit that addressed the placement of a finger on a trigger, but it related to an allegation that an officer displayed force with his finger on the trigger of his service weapon. The search produced no cases from the Supreme Court of the United States. From other circuits, there is a collection of cases that are about police officers who had fingers on triggers. Then there is a disparate group of cases that address either a suspect who had a finger on the trigger or who the officer couldn't tell if there was a finger on the trigger. One example is as follows:

> The appellants point to evidence that the officers did not see Martinez disable the safety of his gun, chamber a round, or put his finger on the trigger of the gun. However, this evidence does not raise a dispute as to a genuine issue of material fact. Monico testified that even though he did not see Martinez disable the safety of his gun, he assumed that Martinez had readied the weapon for use when he was in his vehicle. This assumption was not only reasonable, it was appropriately prudent to view the gun as being ready for firing with a chambered round. Whether Martinez's finger was on the trigger is irrelevant. Even if Martinez's finger was not on the trigger, it would only take a fraction of a second for him to place it there.

---

[3] Search terms: adv: finger /5 trigger & "lethal force" and adv: finger /5 trigger & "deadly force" produced no cases in the Eighth Circuit or from the Supreme Court of the United States.

*Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897, 898 (9th Cir. 2004). In another factually similar case, the Fifth Circuit determined:

> Santiago Martinez arrived first on the scene and observed Garza holding a black handgun. Martinez drew his service weapon, slowly advanced toward Garza, and repeatedly ordered him to drop the gun. Garza did not do so and instead continued to move the firearm around in different directions while making facial gestures at Martinez. At that time, Garza did not have his finger on the trigger and was not pointing the gun at anyone. Martinez took cover, readied his rifle, and radioed the other responding officers to advise them of the situation… At 1:50 a.m., Garza raised his weapon and pointed it in Santiago Martinez's direction. Martinez yelled at Garza to stop, but he did not do so. Martinez fired his weapon at Garza. The other defendants, fearing that Garza was shooting at Martinez, also fired. They continued to fire until Garza fell to the ground and stopped moving. The shooting lasted about eight seconds. Each defendant fired at least one shot, and sixty-one shots were fired in total. Eighteen shots struck Garza, who died from his wounds.
>
> A reasonable officer in any of the defendants' shoes would have believed that Garza posed a serious threat regardless of the direction that Garza was pointing his gun just before he was shot.

*Garza v. Briones*, 943 F.3d 740, 743 (5th Cir. 2019). The most robust statement on this issue is that there is no requirement that a person has a finger on a trigger for deadly force to be used. Conversely, there is not a robust body of caselaw, from any circuit, that indicates, in order to use deadly force, a suspect's finger must be on a trigger and that person must be looking at an officer, while pointing a gun at them. Absent that, this case must fail, even on the facts as stated in the complaint. For the reasons stated above, the Defendants respectfully request dismissal under Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,

*/s/ Michelle Mackel-Wiederanders*
Michelle Mackel-Wiederanders
Assistant City Attorney
400 Robert D. Ray Drive
Des Moines, IA 50309-1891
Email: mrmackel@dmgov.org
Telephone: (515) 283-4537

/s/ *Luke DeSmet*
Luke DeSmet
Assistant City Attorney
400 Robert D. Ray Dr.
Des Moines, Iowa 50309-1891
Telephone: (515) 283-4110
Email: lmdesmet@dmgov.org

ATTORNEYS FOR DEFENDANTS